*1213 OPINION.
Leech :
The ultimate legal question in this case is whether or not the petitioner is subject to the surtax imposed upon personal holding-companies by section 351 of the Eevenue Act of 1934. The answer to that question depends upon whether or not the petitioner was, during the taxable years, a personal holding company as defined in section 351 (b) of that act, and that turns here upon whether or not at least. 80 percent of petitioner’s gross income for either or both of the taxable years, under the cited section, was derived from “royalties, dividends, interest, annuities, and * * ‘ * gains from the sale of stock or securities.” So much is conceded by both parties.
The position of the respondent is that more than 80 percent of petitioner’s gross income was derived from “interest.” This position is premised upon the validity of his contention that items received by the pétitioner for services rendered through its operation of the New York City buying office do not constitute “gross income” either in whole or in a sufficient part to reduce the percentage of gross income from interest below the 80 percent requirement. Petitioner says all such receipts were gross income to it.
Respondent supports his position by the argument that these receipts “represent merely reimbursement for the maintenance of a *1214 buying office which was conducted for the direct benefit of various department stores and not for the direct benefit of the petitioner.” He argues that “The only effect the New York office could have upon the petitioner’s taxable income was to indirectly make possible an increase in the amount of dividends that petitioner might receive upon the stock in some of the department stores which it held by increasing the profits of those stores and that would be to simply indirectly increase its purely personal holding company income in the form of dividends and such was the very income section 851 was designed to reach.” It is then argued in the alternative, as we understand it, that the business of the New York buying office should be segregated and some or all of the expenses of that office deducted from the receipts through that office in the determination of the amount of “gross income” therefrom. The case of All Russian Textile Syndicate, Inc., 23 B. T. A. 1392; affd., 62 Fed. (2d) 614, is cited in support of this position. However, the facts, so far as the record there discloses them, are easily distinguishable from those here. The buying was there done by a wholly owned subsidiary in its name, and . for its parent. It was organized for and existed, in substance, only as “a purchasing and exporting agent for its principal, ⅛ Russian organization’ in Russia.”
Here the petitioner was organized to conduct department stores by direct ownership or through subsidiary companies and to act as purchasing agent for thosei and others desiring the service. It proposed to bring the benefit of the resulting mass buying power to those it served, including those stores in which it was directly interested, and thus increase their profits and dividends to it as well as its gains on any sale of its stocks in those stores.
In conformance with this purpose and plan, the petitioner, during the taxable years, through its New York buying office, acted as purchasing agent for several department stores, only one of which it controlled through stock ownership, in one of which it owned less than 50 percent of the stock, and in at least two others owned no stock. It attempted to secure such business from other corporations and, on occasion, the facilities of its New York buying office were so used. Nor were its services limited to those of buying, but included the procurement of desirable executives and desirable merchandise for the several department stores using its New York facilities. Where, as was true in most cases, petitioner purchased goods for a particular store, they were invoiced directly to that storei and so paid.
The argument of the respondent that the dividends it thus sought to increase were the very income which section 351, supra, sought to reach is beside the question, since the surtax there laid was not imposed on dividends or any other form of' income as such, but was *1215 levied only “upon the undistributed net income of every personal holding company.” That term is defined by the statute and does not include such a company as we think petitioner was during the taxable years.
In our judgment, the facts in Andrew Jergens Co., 40 B. T. A. 868, present a stronger case for respondent than those here. That case involved section 351 (b) (1) (A) of the Revenue Act of 1934, which is the provision with which we are presently concerned. There the Jergens Co. contracted with Woodbury, a wholly owned manufacturing subsidiary, and Sales, a wholly owned selling subsidiary company, to furnish certain of its facilities and services to them at cost. These costs were merely annually allocated by the parent on the books of the subsidiaries, which it kept, one of which companies had neither funds nor bank account. The amounts thus charged to these subsidiary companies were then used to reduce the deductible expenses of the parent company. The question was whether these allocated expenses were gross income under section 22 (a) of the same revenue act. It was conceded that, if they were, the petitioner was not subject to the contested tax proposed under section 351, supra. The Board held that these expenses were gross income to petitioner, despite the fact that Woodbury and Sales were wholly owned and dominated subsidiaries which the parent -was alone serving. In so holding every argument made here for respondent was answered.
Upon the authority of that case, we conclude petitioner was not subject to the contested surtaxes or penalties.

Decision will be entered for the petitioner.